**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No.  06-cv-00995-REB-MJW

LISA M. ROHRBOUGH,

    Plaintiff,

v.

UNIVERSITY OF COLORADO HOSPITAL AUTHORITY, a body corporate and political subdivision of the State of Colorado, and
MARGARET FRUEH, in individually and in her official capacity,

    Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matter before me is defendants' **Combined Motion and Memorandum Brief in Support of Motion For Summary Judgment** [#45], filed March 2, 2007.  I grant the motion.[1]

### I.  JURISDICTION

I have subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

### II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material

---

[1] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument.  Thus, the motion stands submitted on the briefs.  *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that the hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

fact and the movant is entitled to judgment as a matter of law. **FED.R.CIV.P.** 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A party which does not have the burden of proof at trial must show the absence of a genuine fact issue. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Id.* at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999).

### III.  ANALYSIS

Plaintiff, a nurse, was formerly employed by defendant University of Colorado Hospital in its heart transplant unit as a transplant coordinator. Plaintiff claims she was fired in retaliation for exercising her First Amendment right of free expression regarding staffing and transplant allocation issues at the hospital. Defendants contend that plaintiff's First Amendment claim is foreclosed by the Supreme Court's recent decision

in *Garcetti v. Ceballos*, __ U.S. __, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), as interpreted by the Tenth Circuit in *Green v. Board of County Commissioners*, 472 F.3d 794 (10th Cir. 2007). Having reviewed those decisions and the evidence presented both in support and in contravention of defendants' motion for summary judgment, I find and conclude that defendants' assessment is correct, and that plaintiff's claims, therefore, cannot withstand summary judgment.

As remarked by the Tenth Circuit, *Garcetti* "profoundly alters how courts review First Amendment retaliation claims." *Casey v. West Las Vegas Independent School District*, 473 F.3d 1323, 1325 (10th Cir. 2007). Because "the First Amendment protects a public employee's right, in certain circumstances, to speak as a *citizen* addressing matters of public concern," *Garcetti*, 126 S.Ct. at 1957 (emphasis added), the "controlling factor" in determining whether plaintiff's speech is constitutionally protected is whether she spoke pursuant to her "official duties," *id*. at 1960. *Garcetti* makes clear that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.*

Because the parties in *Garcetti* did not dispute that the plaintiff there had acted pursuant to his official duties, the Court had "no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *Id*. at 1961. Lower federal courts that have grappled with this precise issue, however, have by and large agreed that an employee's "official duties" are neither circumscribed by nor limited to a formal, written job description. *See Green*,

472 F.3d at 799-800 (citing **Garcetti**, 126 S.Ct. at 1962).  Nor is it dispositive that the speech in question occurs at work or concerns the employee's work.  **See Brammer-Hoelter v. Twin Peaks Charter Academy**, 492 F.3d 1192, 1204 (10th Cir. 2007).  Rather, an employee's official duties may include speech activities that are not part of her day-to-day job responsibilities, if those activities stem from and are of the type that she was paid to do, or if they involve communications that would be attributable to the employer.  **Green**, 472 F.3d at 800-01; **see also Spiegla v. Hull**, 481 F.3d 961, 966 (7th Cir. 2007) (speech need not fit within employee's "'core' job functions" to be considered pursuant to official duties), **cert. denied**, – S.Ct. – , 2007 WL 2982314 (Oct. 15, 2007).  In addition, speech is made pursuant to official duties if it "reasonably contributes to or facilitates the employee's performance of [an] official duty," even if the speech activities are not "demanded of" the employee, **Brammer-Hoelter**, 492 F.3d at 1203 n.5, or are discretionary, **Morales v. Jones**, 494 F.3d 590, 598 n.3 (7th Cir. 2007).

Given these standards, it is clear that all the speech for which plaintiff was allegedly retaliated against falls squarely within the scope of her official duties.  Plaintiff frankly acknowledged that her primary, overarching job responsibility as a nurse was to ensure patient safety and welfare.  Her reports of and complaints about inadequate staffing in the heart transplant unit, by her own admission, directly related to her concerns that patient safety and welfare were being adversely impacted as a result of the lack of nursing personnel.  That these matters also were of broader significance to the community defendants serve does not alter the fact that plaintiff acted as a nurse, not as a citizen, when she spoke about those issues.  In that context, her speech was not protected by the First Amendment.  **See Green**, 472 F.3d at 801 ("Although the

Court acknowledged that '[e]xposing governmental inefficiency and misconduct is a matter of considerable significance,' the Court concluded the public interest was protected by other means, including a 'powerful network of legislative enactments-such as whistle-blower protection laws and labor codes' – not by permitting First Amendment retaliation claims based on 'expressions employees make pursuant to their professional duties.'") (quoting **Battle v. Board of Regents for Georgia**, 468 F.3d 755, 761 (11th Cir. 2006) (quoting **Garcetti**, 126 S.Ct. at 1962))).

Likewise, the occurrence reports plaintiff drafted to document nursing errors and "near misses" were part of a wider effort to demonstrate to hospital management that patient care was endangered by insufficient nurse staffing in the unit. That these were legitimate issues, as plaintiff asserts, advances her argument not at all. The salient point is that plaintiff's speech regarding those legitimate issues derived from her official duties as a nurse. **See id**. (noting that public employees' allegations of misconduct are not protected speech merely because the employees are "trying to focus attention on apparently misguided actions or improper situations"). Nor does it matter whether the responsibility to draft occurrence reports was included in plaintiff's job description *per se* or whether she did so as a regular part of her job. **See id.** at 800-01 (activities that are not part of the employee's "day-to-day job responsibilities" are nevertheless official duties if they "stemmed from and were the type of activities that she was paid to do"). Moreover, the fact that the drafting of such reports was a matter of discretion is irrelevant: once plaintiff elected to exercise her discretion to write such reports, she did so pursuant to her broader, official duties as a nurse to safeguard patient welfare. **See Morales**, 494 F.3d at 598 n.3 (7th Cir. 2007).

5

Finally, with respect to the alleged "heart switch cover-up" that plaintiff reported to UNOS,[2] plaintiff argues that this speech was not pursuant to her official duties because "[c]ontacting UNOS to report the misallocation of a donor heart was not part of [her] job." (Plf. Resp. at 12.)  This argument reads both her own job description and *Garcetti* and its progeny too narrowly.  Plaintiff acknowledges that her official duties included contacting UNOS to place patients on the transplant list or to change a patient's status on the list.  Certainly, a natural, foreseeable outgrowth of those responsibilities is an attendant responsibility to ensure that patients are *properly* listed with UNOS.  Indeed, plaintiff tacitly acknowledged as much at her deposition:

> Well, there's a number that follows each organ, and so they were responsible for doing cross-checks on who the organ was accepted for, and then they do a generated report based on who received the organ.  When someone gets a transplant, we go onto their web site and we take them out of the listing and put some information in about the transplant.

(Def. Motion App., Exh. A(1) at 197.)  Moreover, as noted previously, that plaintiff called UNOS to report alleged misfeasance by her employer does not take her speech outside the realm of her official duties.  Finally, as was the case in *Green*, because plaintiff's communications with UNOS were of the type "that would be attributable to" the hospital, defendants had a right to "'ensure that [plaintiff's] official communications [were] accurate, demonstrate[d] sound judgment, and promote[d] the employer's mission.'" *Green*, 472 F.3d at 801 (quoting *Garcetti*, 126 S.Ct. at 761).

In sum, none of the speech activities on which plaintiff's retaliatory termination

---

[2] The acronym "UNOS" refers to the United Network for Organ Sharing, "a non-profit, scientific and educational organization that administers the nation's only Organ Procurement and Transplantation Network (OPTN), established by the U.S. Congress in 1984."  *See* United Network for Organ Sharing, *Who We Are* (2007), *available at* http://www.unos.org/whoWeAre/.

6

claim are premised constitutes the kind of citizen speech that is subject to protection under the First Amendment in the wake of *Garcetti*.  Rather, all of plaintiff's communications were made pursuant to her official duties as a nurse within the hospital's transplant unit.  As such, they cannot form the basis of a First Amendment retaliation claim as a matter of law.  Accordingly, defendant's motion for summary judgment should be granted.

## IV.  CONCLUSION

None of the speech underlying plaintiff's solitary retaliation claim is sufficient to create a viable cause of action under the First Amendment.  There is no genuine issue of material fact for trial, and defendant is entitled to judgment as a matter of law.

**THEREFORE, IT IS ORDERED** as follows:

1. That defendants' **Combined Motion and Memorandum Brief in Support of Motion For Summary Judgment** [#45], filed March 2, 2007, is **GRANTED**;

2. That plaintiff's sole claim for relief in this lawsuit as asserted in the Complaint and Jury Demand [#1], filed May 24, 2006, is **DISMISSED WITH PREJUDICE**;

3. That judgment **SHALL ENTER** on behalf of defendants, University of Colorado Hospital Authority, a body corporate and political subdivision of the State of Colorado, and Margaret Frueh, individually and in her official capacity, and against plaintiff, Lisa M. Rohrbough, as to all claims and causes of action asserted in this lawsuit;

4. That the Trial Preparation Conference currently scheduled for Friday, October 26, 2007, at 10:00 a.m., as well as the trial currently scheduled to commence on Tuesday, November 13, 2007, are **VACATED**;

5. That any and all currently pending motions, including but not limited to defendants' **Motion In Limine** [#65], filed September 14, 2007, and the parties' **Joint Motion for Extension of Time To Submit Proposed Jury Instructions** [#69], filed October 12, 2007, are **DENIED AS MOOT**; and

6. That defendants are **AWARDED** their costs to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated October 16, 2007, at Denver, Colorado.

                      **BY THE COURT:**

                      **s/ Robert E. Blackburn**
                      **Robert E. Blackburn**
                      **United States District Judge**